Case number 20-1222, United Airlines, Inc. Petitioner versus Transportation Security Administration. Mr. Feinberg for the petitioner, Mr. Overvold for the respondent. Mr. Feinberg, good morning. Good morning, Judge Henderson. I'm sorry. May it please the court, Adam Feinberg on behalf of Petitioner, United Airlines, Inc. This case is about United's request for a refund of overpaid TSA security fees. We're before the court now for a second time after TSA has once again denied United's request in full. There are two different types of refunds that United requested in this case. The first one relates to involuntary transfer or what we sometimes call IT tickets. This involves a million dollars of requested refund and more than 304,000 tickets. The basic premise of this refund is quite straightforward. A different airline sold the ticket and the passenger was involuntarily transferred by that other selling carrier to United for the actual transportation. The second issue relates to exchange rate difference or what we call ERD tickets, which involve a situation where United sold a ticket in a foreign currency and between the sale of the ticket and when it converted the funds and then remitted them to TSA, the funds were worth slightly more or less than the $2.50 fee at the time. United made a mistake and paid at least the $2.50 fee. In other words, when the fee went down before remittance, United typically, although not in every case, trued it up with its own funds, paid the whole $2.50, but when the $2.50 had appreciated before remittance, United remitted more than $2.50 and with that excess contributing or causing the overpayment. Let me start with involuntary transfer tickets. This issue is obviously the bigger of the two issues and involves one purely legal issue. That is, can United Airlines ever be liable if it was not the fee? Can United ever be liable or ever be responsible for collecting or remitting the fee if it was not the carrier that sold the ticket? There's no dispute about the facts. Let me ask you about that because the statute, I agree with you, the statute says that the selling carrier is solely liable. Let's say it's American Airlines. Why don't you sue American Airlines for the IT fees that you had to pay as the transferee that was actually owed by American? Well, I think there are two answers to that. First of all, the statute specifically says that the carrier that collects the fee is responsible for remitting the fee. There's no way that United would ever be liable or that American would ever be liable to United in that situation. Under the statute and the regulations, each independently, American has to provide those fees solely to TSA. That is explicitly clear in the statute. No, they don't have to. They can give them to the transferee airline. No, they cannot, your honor. The statute- I thought in your case, counsel, maybe I have this completely wrong. In fact, you are requesting refunds because you claim funds came from the transferring airline, right? No, your honor. So not to United. So let me back up a second and explain the factual situation. So passenger travel buys a ticket, let's say on American Airlines. They are required at that time, American Airlines that is, to collect the fee. And then in the following month, at the end of the following month, American Airlines under the statute and regulations is required by law to collect the fee. I understand that, but what happens if the transferring airline sends that fee money to the transferee? Well, but the fee money is never sent by American to United because the statute specifically says that American as the ticketing carrier, the carrier that sold the You are suing under a provision seeking a refund, correct? Because you're talking about is not really in play. Well, it is your honor, because of claiming, you are claiming, as I understand it, that some of these monies were sent to you. And indeed, as the government points out in there, in the joint appendix indicates the government points out, you acknowledge that you failed to remit some of the fees, the assumption being that you did have the fee money sent to you by the transferring airline. Your honor, that that's not right at all. Well, I don't know what you didn't contest it. It's a joint appendix. And that's one of the principal points of the government's making you're essentially acknowledging that yeah, you do sometimes get fee money because they send all of it over and the person responsible. See, you're under refund provision. Now. It's almost it's only an interesting issue that you raise about who's responsible under the law for transmitting that that fee money. There's no doubt that the initial airline is responsible under the law. But you are suing under a refund provision on the assumption that you sent some of that fee money to the government and you did it mistakenly and you want it back. The assumption being that the original airline must have done it. No, no, your honor. Let me clarify the factual situation because it's quite different. And there's no By the way, what I'm about to say is not disputed by TSA. So there were two fees, probably, we say definitely paid to TSA, American Airlines collects the original fee, and it remits the fee directly to TSA. That's what the statute says it has to do. United Airlines, when it transported the passenger paid a second fee to TSA. And in fact, this court in the first United Airlines case four years ago, said that same exact thing. So the refund we're seeking is the second fee that United paid out of its own money when it's not you're not you're not meaning to say different fee, you're just saying second, a second fee that can mean repaid. No, no, no, not repaid. Mr. Mr. Feinberg, is it your position that TSA should have been paid based on these transfers, a total of $1 million from all the airlines, but they actually were paid a total of $2 million. So United wants the $1 million back? Exactly. And and the transferring carriers paid the first million. And United pay the second million, but they got TSA got an extra $1 million more than TSA was entitled to. Exactly. And that is it. And I'll ask the other side about this. Why is it that in the joint appendix, if you're acknowledging the government says you acknowledged that you failed to pay this fee in some instances, and that's what caused some of the problem. Now, you want to look it up, I will, but government will fill in the blank. I mean, I believe I know your honor the reference that you're making, but there were a few outlier tickets, literally 109 tickets out of 304,000 tickets, where there were some anomalies. And it did look like for unrelated reasons, the the fee was not properly paid by United and United concedes that and it's subtracted that amount from the amount of the refund that it's seeking. But that was not properly paid by United. I thought your theory was you never have to pay the fee. Correct. But see, that's the problem here. On the one hand, you're saying you never have to pay it, as if it's routine, that the transferring airline always does. And yet there's evidence here indicating you're acknowledging we failed to pay it in some instances. And so you should subtract that from whatever it is, that's an issue. Obviously, there were occasions that have been occasions where the transferring airline is sending the ticket amount, and the fee, and you will then remit. That is, as a matter of law, you would be required to remit that money if the transferring airline, in fact, I'm not going to say this is accurate, if the transferring airline, in fact, say there's $100 for the ticket, and $20 for the fee, and they sent you $120. And you have reason to know that 20 of that is the fee and that money belongs to the government. Obviously, you have an obligation to send that to the government, even though you are right, originally, that legal obligation is on the transferring airline, right? If they sent you $120, you can keep the $20, right? Well, I respectfully disagree. I think, well, if we owe that $20 back, it would be to American Airlines, because American Airlines remains liable and would still be liable to this day, to TSA for that fee. But I think we're getting a little off on a tangent a little bit, because there's no evidence here whatsoever that even on one single ticket, American Airlines or whoever the other transferring carrier was, sent the fee to United Airlines. And not only that, but that's just not how the airline industry works. And we cited in our reply brief, an audit guy from the auditing every carrier repeatedly. And it specifically says that it's always the carrier that sells the ticket that has to remit the fees, and that the fees are not transferred from carrier to carrier. So the situation we have here is that some other carrier, as this court held four years ago, some other carrier paid TSA a fee, and then United has now paid a second fee. And the statutory question that doesn't seem like there's any dispute about it, is which of those two carriers was required to pay, and it's never United. It's always the other carrier. I don't think it's which of, it's whether you did. And if there's a possibility that they did transfer money to you, sometimes the government can assume that you properly remitted that, because that's the honest thing to do, because it wasn't your money to hold. And so the question is, how many times and how much of that are we talking about? Because you can't claim that in a refund. If they did incorrectly send you some fee money, and you remitted it, you should have remitted it, and you're not entitled to seek a refund for it, because it's government money, right? I don't, I agree with that entirely. But did that ever happen? No, not once. Never. I'm going to ask Mr. Overvalt the same thing when it's his turn. But I'm with Judge Edwards. I thought you said you conceded that in a hundred and some of the cases, you ditto. Right. I did, I did say that, but not because of this issue. It was because of some unrelated reason, and they're- Can you give an example? Can you give an example of one of those hundred tickets, and kind of what went wrong? I, well, I don't, I don't know those particulars, but there, there, there are times when a passenger might be traveling with two issuing carriers, where one carrier issues part of the ticket, and another carrier issues another part of the ticket. And so there's a problem. It is one of these involuntary transfer tickets, in that the, the part that was not issued by United was, that segment was transferred to United, but the other part that was issued by United has some unrelated independent error on it. So that could happen. And this is, by the way, described in, in Mr. Lem's declaration. I don't think the particulars are, are really relevant here, because the, as a legal matter, United is simply never required to remit these fees. And, and as a- You're talking about a million dollars. They might. There's no doubt that they might have, and indeed that is conceded. I'm gonna, I'm still looking for it, and I will find it. They might have. That's why you're asking for a refund. You're asking for a refund on the assumption that you incorrectly sent a whole bunch of fee money to the government that you had no obligation to send. The government says, that's perfectly plausible starting point, but now prove it, because it isn't your responsibility to do that. You argue vigorously that you have no such response. That's your starting point. We have no obligation, and yet you're under the refund provision saying, but we did. Now, I won't even get into how could you have business practices that could even allow that possibility, but that's a whole nother issue. That makes no sense. And when I'm preparing this case, I'm saying, United did that? That's bizarre. They're arguing with great responsibility to send any fee money, because it's on the transferring airline, and yet they're saying they sent over a million dollars to the government, and they want it all back. Well, you have an obligation to prove that you did. Well, your honor, this happens usually in a rush, where some passenger's original flight got canceled, and United is accommodating the passenger. Somebody's running to the plane from some other carrier, and they're doing the government's favor. But at the end of the day, there really isn't a dispute that for over 300,000 tickets, the United paid a fee out of its own money when somebody else sold the ticket, and there's every reason to believe that that other carrier itself paid the money. How do we know that? Well, this court said it four years ago, number one. Number two, says what? That we know that the transferring airline paid that money? Correct. No, it was a footnote that said it is reasonable to believe or something like that. It was not a holding. Well, but I think the court, whether you say it's a holding or dicta, the logic flows from the fact that the legal responsibility from a few things. Number one, that the legal responsibility for submitting the fee always lies with that other carrier. And number two, that the other carriers were audited by TSA repeatedly, all carriers are under their regulatory provisions to ensure that they've complied with the law. And third, because the process in the airline industry, as the IRS itself acknowledged, is that the fees do not get transferred between carriers. Only the airfare does. And when you put all those together, that's more than enough proof that the transferring carrier did in fact pay, as it was required to, all of these other fees. All right, Mr. Overvolt, we'll hear from you. Judge Henderson, may it please the court, Leif Overvolt on behalf of the Transportation Security Administration. Just to start, Judge Edwards, just for the record's sake, the portion of the TSA decision which references that concession from United is JA-7. And I believe the reference portion of United's submission is at JA-19. And TSA does read that the same way, that it's sort of an unexplained concession, given United's now categorical position, that essentially they never have to show anything to establish a refund in these cases. That in the submission itself, they were acknowledging not just that they owe, I mean there were underpayments associated with a category that they at the same time are trying to argue as a categorical matter, they have nothing to show beyond that it was a transfer ticket. Mr. Overvolt, let's hypothesize that American was always the transferring airline and United was always the transferee that did the actual flight with the passenger. And let's say there were 300,000 of those instances. Let's put aside the 100 anomalies, that's going to be my next question. But for the purposes of this question, putting aside the 100 anomalies, is there any reason to believe that American sent the fee to United? The record does not show that. And if anyone would know in that situation, it is the carriers who are accounting for that transaction. So you don't know and United says that's not what happened. What about the 100 anomalies? To be clear, I don't think, I'm sorry, I don't think they say that's not what happened. They say it's not our burden to show whether or not it happened or not. I mean, the reply brief, they note maybe American did send us a fee and then the appropriate situation is for American to sue us to get that fee back and for TSA to proceed against American, which is, I think the agency can reasonably conclude that's not, you know, that doesn't make a whole lot of sense under this refund scheme. I thought Mr. Feinberg had said that, there's no reason to believe that, but that's not either here. We can check the transcript and see. What about the 100 anomalies? For those 100 anomalies, is there any reason to believe that American sent the fee to United? TSA really just does not have information for those anomalies, what the, you know, on what basis there is an underpayment, whether that resulted from some sort of way the carriers had decided they would handle the fee in connection with this transfer. And then let me ask a question about this, the statute and the regs. Does the transferring airline have a responsibility to pay the fee to TSA? TSA would naturally understand that, oh, I apologize, the transferring carrier. In my analogy, does American, before they transferred to United, does American have a responsibility to pay the fee to TSA? So of the two, TSA would look to the transferee who actually provided the transportation. You would look to United, you would look to United. I mean, as a practical matter, and especially in this sort of refund context, TSA wants one fee for one flight. And if, you know, if that is remitted by either of the two carriers, they're not looking for a double payment from the other carrier. It does seem odd, though, to say, TSA wants the money, and we don't care who we get it from. One of the two airlines must have a legal responsibility to do it. Yes. In my hypothetical, does American have legal responsibility to do it? America, I mean, you know. They clearly do under the regulations. Yes. I think, I think so, too, but I think, I think. No, I don't want to, I don't want to fool with this, because this seems like a very straight forward. Well, just, just. As a government, you're treading on very light ground here. The one thing that's clear in this case, that is a legal matter under your regs, it's the transferring airline that is responsible for that fee. You agree, Mr. O'Connell? They would have collected a fee, and they're holding it in trust. But as a legal matter, the way it's written out, when someone decided to draft, their assumption was the transferring airline is responsible for that fee. That's what the law says. I just, the one, I don't want to, there are situations in which, let's say. No, no, no, no. In the regs, you have no claim that you can possibly rest on in the regs that would support a claim that the transferee has that legal obligation. Under your regs, the assumption is the transferring airline has that responsibility, right? Yes. In a situation in which- Show me something, at least show me something that causes- Well, just in a situation, just to offer one hypothetical, which I think, in a situation in which American, the involuntary transfer arises, because American has canceled the flight, and it, you know, provides all the remuneration associated with those flights to United. United issues a United ticket for those passengers. I'm not sure why United is not the selling carrier in that situation, but I do think the fact that we are in a refund context here is also crucial that, you know- Yeah, but you don't want to answer a very crucial question, and my colleague has asked it, I haven't, I'm sure all three have said, you can't possibly, I can understand your argument that, now, if it turns out in a case, for whatever reason, the fee money went from American to we're asking you, as a matter of regulation, the assumption is the airline that is legally responsible for that fee is the transferring airline. That's what the regs say. I mean, the selling carrier, it looks to who's providing operational functions over the flight, and I mean, that's the regulatory language. But I do think we are not in a position here of providing guidance at the outset. This is a situation in which United paid a fee, it asserted in connection with its submission, that we just, she just assumed the transferring carrier also paid the fee because of the timing that they're supposed to remit it a month after collection, but as TSA noted, also- Let me change gears just a little bit. Who's in the, well, is the government in a position to know which airline paid the fee? Is it, it is in position to, well, the fees are reported, are collected and remitted by the carriers, and then reported at a relatively high level. So I'm not sure there's a government record that could point to some flight four years ago and say, oh yes, we marked that as American or United. I mean, I do think that is also an important aspect of the regulatory scheme we have here, that it is the carriers responsible for collecting and remitting subject to oversight from TSA and audits from time to time, but the records are generally in the carrier's hands. And so is what's driving TSA's decision here, that it's worried if it refunds United for these transfer fees, for these TSA fees that resulted from transfers. TSA is worried that if it makes those refunds, it will not get paid at all, because it will have refunded United, and then a transferring airline like American never paid that fee in the first place. Is that the main reason that TSA has denied the refund here? That is the principal concern, yes. I mean, that they need in the showing. And then what you just said a second ago is that the government's not in a position to know if that's what happened or not. Yes. Okay. All right. I understand it. Can I ask you a question from the passenger's point of view? I pay $150 to fly from Columbia to D.C. 25 of that is the security fee. I've already paid it. I get to the airport, and American says, we've canceled, but we're going to put you on United. I don't pay anything extra. That $25 has already been paid to American. Do we know, is it in the record, that when United issues me a ticket, that it then bills American the total $150 or whatever I said at the beginning, the entire fare? Judge, I mean, I believe J23 is the portion of United submission that might present the best. What does that say? And now I'm paraphrasing, but I believe it's United will issue a ticket in exchange for ticket stock from the transferring carrier. So as I understand the transaction, they handle the accounting between the carriers, and the passenger will not pay anything additional. Whether every transaction involves payment of the entire remuneration from one carrier to the other, that is, we don't have those accounting records to reflect that. Well, I thought that's what the IRS, according to the lawyer for the other side, if it didn't make clear, that's what United is relying on, that the IRS says, those fees don't get transferred between airlines. They, I mean, the fact that, I guess, in the reply brief, they're now pointing to this IRS document that says, as a general practice, these sort of fees are not transferred, taxes in general, which may include these sort of fees are not transferred. I mean, I think that underscores the failure of proof before the agency. And I mean, this isn't even something the agency identified, this is a defect. And they waited until the reply brief to put that forward. So. In your, in the agency's decisions, J7, you assert the ticket information that Ryan submitted does not show that United received anything less than all the funds that the passenger had originally paid to the transferring airline for his or her ticket, including the fee. And what the other side is very plausibly arguing is, why should they? Because the assumption should be the opposite. The assumption should be that the transferring airline has the legal responsibility to submit the fee. You're not doubting that. And they apparently often do. That is the way it's set up. And all United is doing here is saying, for some reason that I still don't understand, they sent in a million dollars in fees that they had no obligation to send in. Now, are you doubting that they sent in those million dollars, that million dollars in fees? Are you doubting that? We're not doubting that they they sent in the fees. The question is, did the transferring airline already pay for it? And United's assumption is they must have already paid for it. There is one place where, again, I don't understand the argument very well, United is saying there was some confusion on some tickets where we made a mistake, whatever. Let's assume it was a mistake and it doesn't really answer a question. United is saying you have to plausibly assume that the transferring airline sent in the fee because that's what the regulation said they're required to do. And we mistakenly gave you a second payment, which you're not entitled to. Well, I believe United's initial submission was that you must assume the transferring airline would have sent the fee because they're required to do it a month after remittance. I'm sorry. And so TSA recently noted that, in fact, many transfers may occur before that the fee would otherwise be remitted. We don't know if in those transfers, the fee collected is transferred along with all the other payment associated with a particular transportation. And so we just have an assumption based on when the fees are remitted, which is actually a month, the end of the month following collection, and no other sort of basis to make a judgment. And United is seeking a refund where it's entirely appropriate for it to bear the burden of establishing, even that they didn't simply take the fee from the transferring airline and then pass it along to TSA. How are they going to establish that? Because there's a legal assumption the transferring airline is responsible for the submission of the fee. Well, they certainly could establish whether or not they got anything less than the full amount of the payment associated with a particular ticket in the first place, including a fee. I think TSA can entirely reasonably, if what happened was United got the fee from the transferring carrier and just passed it along to TSA, TSA can reasonably say, we're not refunding a fee in that situation where you just passed it along. It was initially collected by one carrier and we're just passing it along. And especially, you know, this refund coming several years after the years in question, the audits, I mean, that's an entirely reasonable to require some additional showing from United, which they did not make here. What they're saying and why is it implausible for them to say, look, the legal responsibility is the transferring airline to submit that fee. And so the fact that we then went ahead and submitted a fee that we have reason to believe with now was already submitted when we finally do our audits, we're entitled that money back. You're not doubting that they submitted the money for the fee and you're not doubting that the regulations say that the transferring airline has a responsibility to submit the fee. And it doesn't say before or after 30 days, it says the transferring airline has a responsibility. Certainly, I mean, at the very least, the regulations don't say anything about you're forbidden in structuring a transfer of a ticket from one carrier to another. You can't arrange it so that the transferring carrier remits the, you know, steps into all the responsibilities of the selling carrier, including remitting a fee. That's not prohibited. There's no reason in the record to think that's not what happens. I understand all the assumptions are correct, actually, on both sides. The thing I don't understand is who carries what burden to show what? There's no doubt that if they collected the fee, they had a responsibility in my mind. They can't hold that money. They should have sent it. And there's no doubt you say that they sent a whole lot of fee money to TSA. You're not contesting that. So that's not what's his issue. The only issue is with respect to that chunk of money, whether American or hypothetical American had already paid for some or all of those fees. And under a statute of provisions that says TSA may refund if there's an overpayment, United as the party seeking for TSA to exercise that statutory authority. What information would they be looking for, in your view? Well, I mean, if you were the lawyer on the other side, what would you tell your client, this is what we have to get to be able to show that American paid that money and we double paid it. I mean, certainly something in the accounting for the transaction that reflected that United got anything less than the full amount included that the security fee wasn't remitted to United in the first place. And if, you know, if they could, they had that, they could nonetheless show that our agreements provided for American to remit the fee in connection with this particular ticket. I mean, that's something that's beyond what they showed here, but they provided no basis to have any inference about how these transactions actually provided for the fee to be remitted at all. And they would have, they should have that We'll hear from Mr. Feinberg. Why don't you take two minutes? Thank you, Your Honor. First of all, I just want to address briefly the very, very few instances where there were issues. These are all described in paragraph nine of Mr. Lem's declaration. This may get into the outstanding motion about extra record evidence, but I do want to point out that first of all, he does come up with an example of when this happened and it involves a ticket that involves a complex ticket exchange. So where somebody has a ticket and themselves exchange it in addition to the involuntary transfer scenario. So that's the classic example he cites for that. And this is extra record evidence, paragraph nine of Mr. Lem's declaration, but the same evidence is in the record in the form of the actual ticket. So each of these 109 tickets was in the body of all the tickets that were given to TSA. So they can actually look at this and see what the problem was. But our view is that these unrelated issues, 109 tickets shouldn't destroy the refund on the 304,000 tickets. And I now want to return to the main point, the issue of, well, did American actually pay the fee to United? And the answer to this is no. First of all, as a practical matter, carriers don't even pay the amount that was collected. So Judge Henderson, in your example where you paid $150, not only was the $150 not paid, but the airlines don't even transfer the whole amount of the airfare. They have discounted amounts that get transferred. And why would American ever transfer the fee if it under the statute and regulations is going to be liable? It just makes no sense as this court noted, even if indicted in the first case. Is there anything that you have from American confirming that indeed that's their business practice? Not that I'm aware of. Why not? Very seriously, I'm just curious as to how lawyers think these things through. Why not? Because that's pretty straightforward evidence. You're saying that American would say if asked, it is inconceivable that we would have sent that money over to United. It is not conceivable. If that's what you want to know, that's not our business practice. We send the fee and all of it. And how about United's business practice? If you're the transferring airline, right? Where's your evidence that you don't ever pass that along to the transferee? Well, if Judge Henderson and Judge Edwards, if the question is, where is that in the record? It's obviously not in the record, but that is in fact what happened. And I do want to just sort of put a- I mean, you understand- Mr. Feinberg, to Judge Henderson's question, is that what United does? You can represent as an agent of United. Maybe we will not consider this because it's extra record, but you will represent today as an agent of United that when United transfers a passenger to American, United does not send along the TSA fee. Correct. Because United understands that it owes the fee. And if you look at the joint appendix, page 32 of the first United case, this is a page from TSA's audit of United. And it goes through how it conducts these audits and what it does. And it specifically says that other airline tickets, amongst others, are exempt from the fee. And it goes through and verifies that those tickets are, in fact, other airline tickets. And so everybody understands the IRS, TSA, the carriers, that the fees are- remain the liability of the transferring carrier. No, no, no. It isn't that. It's that the practice is that the transferring airline always pays the fee. The legal liability starts out with the transferee, but money could be transferred and then the transferor would- the receipt, the recipient would be responsible to send it. So, I mean, you're going too far. You're reaching too far. What we need to be convinced is that it's just routine practice. That's common sense. They're not going to send the fee over because it's their responsibility and that's the way they clear it. That's the evidence we need. And it's not in the record. Well, let me say two things about that, Judge Edwards. First of all, there's a fundamental fairness issue here. Keep in mind, there are no regulations, there's no procedure. Nobody knows how you're supposed to go about getting a refund from TSA. And United and its consultant, Ryan, submitted mountains of information. And the issue that we're talking about, that we spent this entire argument talking about, was never raised by TSA in the context of this audit. Ryan, four times at least that I could count in the record, said, if there's anything else you need, let us know. And not once did TSA or the CBP review team that was looking at this say, oh, well, wait a minute. How do we know that the fee didn't get transferred to you by American? And had TSA even hinted that that was a concern? United, obviously, they said to you, how do we know that? Well, the answer would have been what I'm saying, I would have liked to have seen. Your response should have been, you got a clue as to what they were concerned about. Your response would have been, it is standard practice for United, American to do it this way. And if I'm counsel, and I'm saying this respectfully, but honestly, they did ask the question. And your answer should have been, we never do it that way. It would have to be in an odd situation. We can show you a few, but that is not our practice. And it's not American's practice. And here are the affidavits that was never submitted. Well, Judge Edgeworth, there's an important point here. And that is, they never told us this during the time, we had no opportunity to do this. The documents you're reading, were not shown until to United until April 20th of 2020. That's the first time we heard of any of this. After years of exchange of information, what else do you need? What can we give you? Never does TSA or the CBP review team say, well, wait a minute, how do we know that American didn't give you the fee? If they had only said that, we obviously would have provided it, including the very things that you're talking about. But it seems to me to be fundamentally unfair to have this long exchange of information, this back and forth, and not to even tell the other side what the major deficiency you see in their presentation. Well, but the burden of proof remains on you. If there are no more questions, all right. Thank you, counsel. And Madam Clerk, would you call a recess, please?
judges: Henderson, Walker, Edwards